IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JASON NATHANIEL GILMER, | ) | Civil Action No. 7:14cv00111 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DR. SMITH, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Jason Nathaniel Gilmer, a Virginia inmate proceeding *pro se*, filed an amended complaint, pursuant to 42 U.S.C. § 1983. Gilmer names as defendants L. Fleming, Warden of Keen Mountain Correctional Center ("KMCC"), A. Whited, head nurse at KMCC, and Dr. Smith, the physician at KMCC. Gilmer alleges that defendant Dr. Smith failed to adequately treat Gilmer's broken femur, in violation of the Eighth Amendment of the United States Constitution. Presently before me are defendants' motions for summary judgment. Gilmer has filed responses to the motions, and this matter is ripe for disposition. Upon consideration of this action, I conclude that Fleming's and Whited's motions for summary judgment should be granted but that disputes of material facts preclude awarding summary judgment in favor of Dr. Smith.

**I.**
**A.**

Gilmer sustained multiple injuries, including fractures in his left tibula, left ankle, right ankle, right foot, right femur, and neck vertebrae, during an automobile accident in 2009. Gilmer began his incarceration at a regional facility in 2010 and subsequently arrived at KMCC in June 2012.

Upon his arrival at KMCC, Gilmer began writing requests for medical services, requesting, *inter alia*, copies of his medical record, an assignment to a bottom bunk in a cell on

the first floor due to "a lot of pain" from the titanium hardware in his legs and ankles, and more pain medication. Nurse Whited responded to most of the requests, often telling Gilmer to request a sick call, that he is scheduled to see the doctor, or that he already met with the doctor about the issue.

Gilmer complained of right knee pain when he met with Dr. Smith on November 20, 2012, and after an examination, Dr. Smith concluded the joint was stable without loss of muscle mass. Nonetheless, Dr. Smith ordered that an X-ray be taken of Gilmer's right knee and femur. Dr. Smith read the private doctor's subsequent report dated November 30, 2012, which noted a "[f]racture of the proximal shaft of the femur is noted with internal fixation. There is no union across the fracture line. The alignment is[,] however, normal. No abnormalities are seen at the knee."[1] Imaging Report dated Nov. 30, 2012 (Docket No. 35-4 at 12).

Dr. Smith met with Gilmer again on January 3, 2013, noting that Gilmer's gait with crutches was stable and that Gilmer wanted, *inter alia*, a knee brace and insoles. Dr. Smith explained the private doctor's report about the nonunion, that alignment was normal, and that there were no abnormalities in the knee. Dr. Smith ordered X-rays of Gilmer's right ankle and hip, insoles, a bottom bunk housing assignment, and naprosyn instead of ibuprofen to manage pain.

Dr. Smith read the private doctor's subsequent X-ray report dated January 8, 2013, which noted, *inter alia*, that "[p]ost-operative changes of internal fixation of fracture of the proximal femur is noted . . . . Fracture line is still open. Soft tissues are unremarkable." After reading this second report, Dr. Smith concluded that the treatment plan of various physical supports and

---

[1] The X-ray was taken at KMCC but sent to a private radiologist office for interpretation.

2

Case 7:14-cv-00111-PMS-RSB   Document 51   Filed 03/03/15   Page 2 of 7   Pageid#: 216

medications remained appropriate, and he declined to order surgery or a consultation with another physician. Gilmer left the care of Dr. Smith on February 13, 2013, when he was transferred to Green Rock Correctional Center ("Green Rock").

**B.**

After defendants filed motions for summary judgment, Gilmer filed a motion to amend to attach a new exhibit to the complaint. Within a month of arriving at Green Rock, another prison doctor sent Gilmer to a doctor at a private orthopedic clinic, who concluded:

> His x-rays show that he has a subtrochanteric fracture that was treated with an interlocking nail. He has gone on to a nonunion. The distal screw is either bent or broken.
>
> At the present time[,] he has an atrophic nonunion and this will need further surgery in order to try to make it heal. They will probably need to take out the rod and the screws and subsequently place a large nail in it and this may go on to heal. However, he may need subsequent bone grafting[,] and he is aware of this . . . . [T]his surely should be done. If not, he will continue with continual pain in his right femur.

Mot. to Amend, Ex. A-1 at 1 (Docket No. 39-1).

Gilmer acknowledges that defendants had no involvement with this referral but asks that this exhibit be admitted to support Gilmer's claim that his condition qualifies as a serious medical need. On that basis, I will grant the motion to amend.

**II.**

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a

3

light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). However, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

### III.

Gilmer alleges that Dr. Smith refused to properly treat his fractured femur, in violation of the Eighth Amendment of the United States Constitution. I conclude that disputes of material facts exist as to whether Dr. Smith was deliberately indifferent to Gilmer's injury or pain, and accordingly, I will deny Dr. Smith's motion for summary judgment.

4

To succeed on his Eighth Amendment claim about medical care, Gilmer must sufficiently demonstrate that Dr. Smith was deliberately indifferent to a serious medical need.[2] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Deliberate indifference means that Dr. Smith was personally aware of facts indicating a substantial risk of serious harm and actually recognized the existence of such a risk. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994); *Estelle*, 429 U.S. at 104. "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier*, 896 F.2d at 851-52. A health care provider may be deliberately indifferent when the treatment provided is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 851.

Viewing the evidence in the light most favorable to Gilmer, a jury could find that Dr. Smith's treatment of Gilmer's broken femur constituted deliberate indifference. Gilmer's femur was broken in 2009, and as early as November 30, 2012, Dr. Smith became aware that, approximately three years later, the fracture in Gilmer's femur was nonunion and that Gilmer was complaining of pain and difficulty walking. Despite this information, Dr. Smith prescribed

---

[2] Gilmer's unhealed, fractured femur that is held together with various titanium hardware constitutes a "serious medical need." *See, e.g.*, *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (defining a "serious medical need" as, *inter alia*, "one that has been diagnosed by a physician as mandating treatment").

5

ibuprofen, naprosyn, inserts, and a lower-bunk housing assignment, none of which could heal the broken femur and would seemingly, at best, provide only the barest palliative care.

Doctors may not be liable under § 1983 for negligent diagnosis or treatment. *Johnson v. Quinones*, 145 F.3d 164, 168-69 (4th Cir. 1998) (citing *Estelle*, 429 U.S. at 106); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). However, a reasonable jury could find that Dr. Smith recklessly disregarded the substantial risk that Gilmer would continue to experience pain from his broken femur in the absence of medical intervention beyond ibuprofen, naprosyn, inserts, and a lower-bunk housing assignment, which could be apparent to a reasonable, similarly-situated physician. In sum, a reasonable jury could conclude that such treatment for a three-year old broken femur was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. Accordingly, I conclude that a jury trial is necessary to resolve Gilmer's claim against Dr. Smith.

## IV.

Gilmer seeks to hold Warden Fleming liable due to his supervisory capacity as a warden and for deeming a single grievance "unfounded." Supervisory liability under § 1983 may not be predicated on the theory of *respondeat superior*, and Gilmer fails to establish any relationship between Warden Fleming and Dr. Smith's medical decisions. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n.7 (1978); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Fisher v. Washington Area Transit Auth.*, 690 F.2d 1133, 1142 (4th Cir. 1982). Warden Fleming's review of one grievance is not sufficient to establish liability. *See, e.g.*, *DePaola v. Ray*, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, at *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (citing *Brooks v. Beard*, 167 F. App'x 923, 925 (3rd Cir. 2006)). Gilmer similarly fails

6

to establish any actionable claim under § 1983 against Nurse Whited, who was allegedly the head nurse and merely responded to Gilmer's requests forms. Accordingly, I conclude that Warden Fleming and Nurse Whited are entitled to summary judgment.

**V.**

For the reasons stated, I will grant Gilmer's motion to amend and Warden Fleming's and Nurse Whited's motions for summary judgment, and I will deny Gilmer's motion for a hearing as moot and Dr. Smith's motion for summary judgment.

**ENTER**: This __3rd__ day of March, 2015.

_/s/ Norman K. Moon_
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE